UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RICHARD PEDRO BADILLA MEZA,

    Petitioner,

v.                                                      Case No: 6:24-cv-542-JSS-DCI

MONICA ENISSE NUNEZ REYES,

    Defendant.
_____/

## ORDER

Petitioner Richard Pedro Badilla Meza moves ex parte for a temporary restraining order against Respondent Monica Denisse Nunez Reyes, in conjunction with a Verified Petition for the Return of Minor Children Pursuant to International Treaty and Federal Statute (Verified Petition, Dkt. 1). (Motion, Dkt. 9.) The court held a hearing on the Motion on March 22, 2024. Upon consideration, the motion is granted in part and denied in part.

## BACKGROUND

Petitioner and Respondent are the parents of a minor child, A.V.B.N. (the Child). (Dkt. 1 at 1.) Petitioner, Respondent, and the Child are citizens of Chile. (*Id.* ¶¶ 1–3.) Petitioner and Respondent were not married and shared custody of the Child in Chile, with Petitioner seeing the Child daily. (*Id.* ¶ 4.)

In April 2022, with Petitioner's consent, Respondent brought the Child to Orlando, Florida for a vacation. (*Id.* ¶ 2; Dkt. 1-7.) Petitioner later consented to the

Child remaining in Orlando with Respondent until September 2022. (Dkt. 1 ¶ 3.) When Respondent and the Child did not return to Chile in September 2022, Petitioner began to seek help to secure the return of the Child, resulting in the filing of the Verified Petition. (*Id.* ¶ 4.)

Upon learning of Petitioner's attempts to have the Child returned to Chile, "Respondent has relocated to an address unknown to [Petitioner] and she has cut off all contact between Petitioner and the [C]hild." (*Id.* ¶ 7.) Petitioner further states that Respondent travelled to Miami with the Child to live, but subsequently returned to Orlando. (*Id.* ¶ 8.) Petitioner believes that the Child and Respondent are currently residing in Orlando. (*Id.* ¶ 15.) According to the Chilean Central Authority, the Child is being retained by Respondent in the United States unlawfully under Chilean law and in violation of Petitioner's custodial rights. (*Id.* ¶¶ 9–13; Dkt. 1-3.)

On March 21, 2024, Petitioner filed the Verified Petition seeking the return of the Child to Chile. (Dkt. 1.) Petitioner also filed the Motion seeking a temporary restraining order directing the U.S. Marshal Service or other law enforcement authority to arrest the Child and remove him from Respondent's control and thereafter serve Respondent with notice of these proceedings; granting temporary physical custody of the Child to Petitioner's agent pending a resolution of the petition; requiring Respondent to remain in the jurisdiction of the court, surrender her and the Child's travel documents, and to appear and show cause why the Child should not be returned;

setting an expedited final hearing on the merits of the Verified Petition; and ordering that the Child be returned to Chile.  (Dkt. 9 at 14–15.)

## APPLICABLE STANDARDS

Pursuant to Federal Rule of Civil Procedure 65(b)(1), a court may issue a temporary restraining order without notice to the adverse party only upon a showing that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and the movant's attorney "certifies in writing any efforts made to give notice and the reasons why it should not be required."  Temporary restraining orders are "designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction."  *United States v. Kaley*, 579 F.3d 1246, 1264 (11th Cir. 2009) (Tjoflat, J., specially concurring) (quoting 11A C. Wright, A. Miller, & M. Kane, *Fed. Prac. and Proc.: Civil* § 2951, at 253 (2d. ed. 1995)).  A temporary restraining order "must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record."  Fed. R. Civ. P. 65(b)(2).  A temporary restraining order may not remain effect for greater than 14 days, unless extended by the court for good cause or the adverse party consents.  *Id.*

Middle District of Florida Local Rule 6.01 further requires that a legal memorandum in support of a motion for a temporary restraining order must establish: "(1) the likelihood that the movant ultimately will prevail on the merits of the claim,

(2) the irreparable nature of the threatened injury and the reason that notice is impractical, (3) the harm that might result absent a restraining order, and (4) the nature and extent of any public interest affected." M.D. Fla. Loc. R. 6.01(b); *see Gonzalez v. Solin*, No. 8:22-cv-1091-CEH-JSS, 2022 WL 1912896, at *2 (M.D. Fla. June 3, 2022).

## ANALYSIS

Upon consideration of the Verified Petition, the Motion, and Petitioner's supporting evidence, the court finds that Petitioner has satisfied his burden to warrant entry of the requested temporary restraining order in part.

Initially, the court finds that Petitioner has sufficiently established a likelihood of success on the merits of his Verified Petition and an immediate and irreparable injury requiring the issuance of a temporary restraining order. In the Verified Petition, Petitioner seeks relief pursuant to the Hague Convention on the Civil Aspects of International Child Abduction. (Dkt. 1); *see* Int'l Child Abduction Convention Between the United States of Am. & Other Governments Done at the Hague Oct. 25, 1980, T.I.A.S. No. 11670, 1988 WL 411501 (the Hague Convention). The Hague Convention "furthers its goal of 'discourag[ing] child abduction,' by requiring signatory states to make available a remedy whereby parents of abducted children can bring proceedings to compel the return of their children who have been taken to foreign countries." *Fernandez v. Bailey*, 909 F.3d 353, 358–59 (11th Cir. 2018) (citing *Lozano v. Montoya Alvarez*, 572 U.S. 1, 16 (2014) and Hague Convention arts. 7, 12.). Congress implemented the Hague Convention through the International Child Abduction

Remedies Act (ICARA) of 1988, which confers jurisdiction upon this court to resolve actions brought under the Hague Convention. 22 U.S.C. §§ 9001–9011; *see Fernandez*, 909 F.3d at 359. Under the ICARA, a court "may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." 22 U.S.C. § 9004(a).

To succeed on a petition filed under the Hague Convention, Petitioner must establish (1) that the Child was habitually resident in Chile at the time Respondent removed them to the United States; (2) that the removal was without Petitioner's consent and constituted a wrongful breach of his custody rights under Chilean law; and (3) that Petitioner was actually exercising those custody rights at the time of the removal. *See Seaman v. Peterson*, 766 F.3d 1252, 1257 (11th Cir. 2014) (citing Hague Convention art. 3 and *Ruiz v. Tenorio*, 392 F.3d 1247, 1251 (11th Cir. 2004)); *see also* 22 U.S.C. § 9003(e)(1) (requiring that a petitioner establish by a preponderance of the evidence that "the child has been wrongfully removed or retained within the meaning of the Convention").[1] Petitioner has submitted evidence to support each of these requirements. Specifically, Petitioner alleges in the Verified Petition that the Child

---

[1] The Hague Convention further provides that "[t]he judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year referred to in the preceding paragraph, shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment. Hague Convention art. 12; *see also Seaman*, 766 F.3d at 1257 ("The Convention also creates certain defenses that, if established by a respondent, will justify a court in denying relief to the petitioner.").

was a habitual resident of Chile and that Petitioner was exercising his custody rights at the time of the Child's removal. *E.g.*, (Dkt. 1 ¶¶ 1–4); *see also* (Dkt. 1-8 (Child's birth certificate).) Petitioner has further filed a letter from the Chilean Central Authority supporting these facts and advising that the Child's continued retention in the United States is in violation of Chilean law and Petitioner's custody rights. (Dkt. 1-3.) The court finds this evidence sufficient to demonstrate a likelihood that Petitioner will succeed on the merits of the Verified Petition. *See, e.g.*, *Romanov v. Soto*, No. 3:21-cv-779-MMH-MCR, 2021 WL 4033576, at *1 (M.D. Fla. Sept. 3, 2021) ("Upon review of the Verified Petition, the Court determines that some relief is warranted to assure the continued availability of the Minor Children pending a hearing on the merits of the Verified Petition.").

Petitioner has further submitted evidence to support the irreparable nature of the threatened injury and the reason that notice is impractical. Petitioner alleges an irreparable injury of Respondent further absconding with the Child. *E.g.*, (Dkt. 1 ¶ 46.) Petitioner further alleges that Respondent concealed the Child's whereabouts upon learning of Petitioner's efforts to secure the Child's return and cut off all contact between Petitioner and the Child. (*Id.* ¶ 7.) Petitioner has further alleged that Respondent has relocated within Florida with the Child at least once and may do so again upon learning of the Verified Petition. (*Id.* ¶ 8.) This evidence indicates that Respondent may attempt to further conceal the Child and hinder these proceedings, causing irreparable injury to Petitioner. *E.g.*, *Gonzalez*, 2022 WL 1912896, at *3;

*Watson v. Watson*, No. 8:22-cv-2613-WFJ-TGW, 2022 WL 16963830, at *2 (M.D. Fla. Nov. 16, 2022) ("ICARA permits a court to 'prevent the child's further removal or concealment before the final disposition of the petition.'").

The court further finds that the public interest is served by enforcing the Hague Convention through the ICARA, which "empower[s] courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims." 22 U.S.C. § 9001(b)(4); *see also Watson*, 2022 WL 16963830, at *2 ("[I]ssuing the requested temporary restraining order would not be against the public interest.").

Nevertheless, the court finds that Petitioner has failed to demonstrate sufficient facts to warrant entry of a temporary restraining order for the immediate arrest of the Child and removal of the Child from Respondent's custody. With respect to provisional remedies, such as a temporary restraining order under the ICARA, a court may not "order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied." 22 U.S.C. § 9004(b). Under Florida law, a petitioner seeking enforcement of a child custody determination "may file a verified application for the issuance of a warrant to take physical custody of the child if the child is likely to imminently suffer serious physical harm or removal from this state." Fla. Stat. § 61.534(1). "If the court, upon the testimony of the petitioner or other witness, finds that the child is likely to imminently suffer serious physical harm or removal from this state, it may issue a warrant to take physical

custody of the child." Fla. Stat. § 61.534(2). Here, Petitioner argues that an order removing the Child from Respondent's custody is necessary because Respondent has absconded with the Child and is concealing the Child's whereabouts from Petitioner. (Dkt. 9 at 11–12.) However, the court finds that Petitioner has failed to establish that the Child is likely to imminently suffer serious physical harm or removal from Florida. *See* Fla. Stat. § 61.534(2). Indeed, although Respondent may have moved with the Child at least once in the United States, there is no indication that Respondent ever left the state of Florida with the Child or would do so upon being notified of the Verified Petition. Petitioner's conclusory assertions are not sufficient to warrant the arrest of the Child and removal of the Child from Respondent's custody. *See, e.g.*, *Galli v. Marques*, No. 6:21-cv-358-PGB-LRH, 2021 WL 2829018, at *2 (M.D. Fla. Mar. 5, 2021) ("Under Petitioner's reading of the statute, an arrest warrant would be justified in virtually every case. Without some additional evidence beyond Respondent's prior removal of the Child from Brazil, the Court is unwilling to grant '[s]uch an intrusive and potentially dangerous remedy.'") (quoting *Staats v. McKinnon*, 206 S.W.3d 532, 541 n.11 (Tenn. Ct. App. 2006)); *Sokolowski v. Wengrze*, No. 6:20-cv-638-Orl-40DCI, 2020 WL 3266054, at *2 (M.D. Fla. Apr. 24, 2020) (same); *cf. Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1297 (11th Cir. 2005) ("A temporary restraining order protects against irreparable harm and preserves the status quo until a meaningful decision on the merits can be made.").

## CONCLUSION

Accordingly, Petitioner's Verified Ex Parte Motion for Temporary Restraining Order (Dkt. 9) is **GRANTED in part** and **DENIED in part**, as follows:

1. The United States Marshal shall immediately serve Respondent with a copy of the Verified Petition and all attachments (Dkt. 1), Petitioner's Motion and attachments (Dkt. 9), and this order. Such service shall be made at Respondent's address: 210 N. Terry Ave., Orlando, Florida 32801. In the event that the United States Marshal is unable to serve Respondent in accordance with this paragraph, the United States Marshal shall promptly notify the court.

2. Upon service by the United States Marshal, Respondent is **ORDERED** to surrender each of her and the Child's passports, visas, or other travel documentation, if any, to the United States Marshal. Any and all travel documents seized by the United States Marshal shall be held by the Clerk of Court pending further order of the court.

3. Respondent is further **ORDERED** to remain within the jurisdiction of this court pending resolution of this matter; and to refrain from taking any action, or aiding and abetting others to take any action, to remove the Child from the jurisdiction of this court, or to obtain replacement travel documents for herself or the Child. Respondent shall also

immediately advise the court of any change to her residence or the residence of the Child.

4. Respondent is further **ORDERED** to appear at an initial status hearing before the undersigned on March 29, 2024 at 10:30 am in Courtroom 6C, George C. Young United States Courthouse Annex, 401 W. Central Boulevard, Orlando, Florida. Following the initial status hearing, the court will set an evidentiary hearing on the merits of Petitioner's Verified Petition.

**ORDERED** in Orlando, Florida, on March 22, 2024 at 3:30 pm.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Party